OPINION
At 8:10 p.m. on November 6, 1999, Trooper James Lott of the Ohio State Highway Patrol was dispatched to investigate an automobile accident in Lancaster. Upon arriving at the scene, Trooper Lott was informed that a two-car accident had occurred, and one vehicle had left the scene. The car at the scene of the accident had damage to the rear end of the vehicle. The trooper was given the license plate that was left behind from the vehicle which left the scene of the accident. Upon running a check of the license plate, the trooper discovered that the vehicle was registered to appellant Jack L. Stillinger. He was also informed that the vehicle was a white sport-utility vehicle. When he spoke to the driver of the other vehicle involved in the accident, she confirmed that the vehicle which struck her was a white sport-utility vehicle, and stated it was operated by a male driver. Trooper Lott then proceeded to appellant's residence, which was approximately one-quarter mile from the scene of the accident. Upon arriving at the residence, a white sport-utility vehicle was parked in the driveway. The front end of the vehicle in the driveway was damaged, and the front license plate was missing. The number on the license plate on the rear of the vehicle matched the number on the license plate left at the scene of the accident. Trooper Lott knocked both on the front and back doors of the residence, but received no response. Trooper Lott then requested that the Ohio State Highway Patrol dispatcher telephone the residence. Appellant answered the telephone. The dispatcher told him that he was to answer the door, as Trooper Lott wanted to speak with him. When appellant answered the door, Trooper Lott was waiting outside. The trooper was surprised that appellant came to the door, as usually after speaking to the dispatcher no one comes to the door. Appellant was not wearing shoes. The trooper told appellant to put his shoes on, and come back outside. Appellant complied. Appellant told the trooper he was the only one home, as his wife was out of town visiting relatives. Upon further questioning, he stated that he did not remember being in an accident. The trooper noted that appellant smelled of alcohol, his eyes were red and bloodshot, and he was very unsteady on his feet. Appellant told the trooper he had returned from golfing at the country club, where he had consumed three or four beers and a few shots. Appellant admitted that he had too much to drink. The trooper then asked appellant to come toward the police car, where he conducted field sobriety tests. Appellant was charged with driving under the influence of alcohol pursuant to R.C. 4511.19 (A)(1) and(3), and assured clear distance. Appellant moved to suppress all statements made to the officer on the basis that he was unconstitutionally seized within his residence without a warrant. At the suppression hearing, appellant testified that when he arrived home from the country club, he told his son he had had an accident, and hated to call his wife and tell her because he was driving her car. He then took pain medication, and went to sleep. He did not hear a knock on the door, but was interrupted in his sleep by the telephone. He testified that when he saw the trooper, he assumed the trooper needed help with his accident report. Appellant testified that he felt he had to comply with the direction of the dispatcher to answer the door. He further testified that he felt he had to comply with the directive of Trooper Lott to put his shoes on and return outside. The court overruled the motion to suppress. Appellant then pled no contest to driving under the influence of alcohol in violation of R.C. 4511.19 (A)(1). He assigns a single error on appeal:
ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.
Appellant argues that because he submitted to the officer's show of authority in leaving the sanctity of his home, both in response to the phone call and to the request to put on his shoes, he was unlawfully seized under the Fourth Amendment. In his motion to suppress, appellant argued that while in custody, he was subjected to a custodial interrogation, and made prejudicial admissions to the officer. Defendant's motion to suppress, December 13, 1999. He argued that thereafter, he was arrested and taken to the police station. However, at the suppression hearing, appellant withdrew branch three of his motion concerning the custodial interrogation, and focused solely on the issue of probable cause to arrest appellant. Therefore, the issue before this court is not whether appellant was in custody for purposes of Miranda at the time he made damaging statements to the officer, but at what point the arrest occurred. Appellant submits that he was arrested at the time the dispatcher phoned his home and instructed him to answer the door. Appellant relies on U.S. v. Jerez (1997), 108 F.3d 684, in support of his proposition that he was seized when ordered to leave his residence. In Jerez, the court concluded that under the totality of the circumstances surrounding the encounter, the defendants were seized within the meaning of the Fourth Amendment. In that case, the officers had knocked on a motel room door for three minutes, late at night, accompanied by commands and requests to open the door. The officers further knocked on the outside window for one and one-half to two minutes, and shined a flashlight through a small opening in the drapes onto the face of one of the defendants as he lay in bed. Further, the defendant who finally opened the door to the motel room was wearing only his underwear. The court concluded that a reasonable person in the position of the defendants would not feel free to ignore the deputies and continue about their business. Id. at 693. The deputy's persistence, in the face of the defendants' refusal to admit them to the motel room, transformed what began as an attempt to engage in a consensual encounter into an investigatory stop. Id. at 692. Therefore, the court analyzed the appropriateness of the seizure under the reasonable suspicion standard, rather than the standard of probable cause required for a formal arrest. Id. at 693. In the instant case, assuming arguendo that appellant was seized within the meaning of the Fourth Amendment when he submitted to the show of authority and answered the door, at that point in time the seizure was at most an investigatory stop pursuant to Terry v. Ohio (1968), 392 U.S. 1. Therefore, Trooper Lott needed only have a reasonable suspicion of criminal activity to justify a brief detention for purposes of investigation. At the time of the encounter with appellant, the trooper knew that a white sport utility vehicle bearing a license plate registered to appellant had been involved in an accident and left the scene. Upon driving to the address listed on the registration, the trooper found a white sport utility vehicle parked in the driveway, with front-end damage, a missing front license place, and a rear license plate matching the plate left at the scene of the accident. The officer had a reasonable, articulable suspicion of criminal activity to justify briefly detaining appellant to determine if he was driving the vehicle at the time of the accident. When the trooper questioned appellant about the accident, appellant stated that he did not remember being in an accident, but admitted that he had returned home earlier from the country club. Therefore, appellant admitted he had been driving the vehicle at approximately the time of the accident. In addition, appellant appeared to be under the influence of alcohol, and admitted to the officer that he had too much to drink. At this point, the facts known to the officer justified further detention for purposes of conducting field sobriety tests. Appellant does not challenge the existence of probable cause to arrest appellant following the administration of field sobriety tests.
The assignment of error is overruled. The judgment of the Lancaster Municipal Court is affirmed.
 __________________________ Gwin, P.J.,
By Gwin, P.J., Wise, J., and Edwards, J., concur